IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 3:19-bk-1971 |
| CAPSTONE PEDIATRICS, PLLC, | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| CDS BUSINESS SERVICES, INC. d/b/a | ) | |
| NEWTEK BUSINESS CREDIT. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 3:20-ap-90140 |
| | ) | |
| | ) | |
| AMERICA CARES TRUST d/b/a | ) | |
| CARENATION | ) | |
| | ) | |
| Defendant. | ) | |

---

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF EXPEDITED MOTION FOR
PRELIMINARY INJUNCTION

---

Comes now CDS Business Services, Inc. d/b/a Newtek Business Credit (hereinafter, "**CDS**") and files this supplement to its expedited motion and memorandum in support for Injunctive Relief [DE 4], based on the discovery of additional facts by CDS since the time that the court set this matter for expedited hearing [DE 5].

(1) It has now been discovered that CareNation has not only been diverting CDS' property and collateral in the Debtor's DIP Operating via its improperly obtained access to the CashPro® platform (as discussed in the original motion), but since August 10, 2020 , its president Michael Gaw ("**Gaw**") has actually been signing checks - both payroll

and otherwise - on the Carve-Out Account into which CDS' money was moved by CareNation[1], despite his knowledge that he is not an authorized signatory on that account (or any of Debtor's other accounts). Lest there by any doubt that Gaw knew that he was not an authorized signatory on any of the DIP Accounts, and presumably in response to having been served with the complaint and motion for injunctive relief, Gaw contacted Bank of America on or about September 14, 2020 - just three days ago and more than a month after he began signing checks of Capstone Pediatrics PLLC - requesting (apparently for the first time) that Bank of America add him as an authorized signatory on the accounts. Bank of America properly relayed Gaw's request to Jim Davis (the court appointed CRO of Debtor and the only authorized signatory on the accounts) who denied Gaw's request for obvious reasons. Upon being informed on September 15 of Davis' refusal to consent to Gaw's request to be added as an additional signatory, Gaw asserted to Bank of America that CareNation was the "owner" of the accounts by virtue of the APA, and that Bank of America was obligated to follow his instructions and to disregard any contrary instructions from Jim Davis. In reply to Gaw's response, Bank of America informed both Gaw and Davis that Bank of America was retaining legal counsel "regarding this and other issues related to Capstone Pediatrics". A copy of that correspondence is attached hereto as **Exhibit 1**. CDS has now learned that the "other issues" in question involve the fact that Gaw, purporting to sign as "Chairman" of Debtor Capstone Pediatrics, PLLC (and using Debtor's Tax identification number) applied for, and received in the name of Debtor, a "Paycheck Protection Program" ("PPP") loan in the amount of

---

[1] The Care-Out Account is specifically entitled "Capstone Pediatrics PLLC Debtor in Possession Case 20-01971".

$636,386.00, which Gaw caused to be deposited into the DIP Carve-Out Account over which CareNation had by then begun surreptitiously accessing and exercising control. A copy of the PPP loan application and promissory note is attached hereto as **Collective Exhibit 2**.

(2) Knowing, then, that there was not only a pending motion for a preliminary injunction to address Gaw's unauthorized use and control of the DIP Accounts, for which a hearing had already been set by the court in just a few days, and further knowing that Bank of America had never recognized Gaw as a signatory to the Bank Accounts and was not assenting to his demands to be so added, Gaw nonetheless proceeded to handwrite that same day - on September 15, 2020 - a $500,000.00 check from the DIP Carve-Out Account payable to CareNation (draining the DIP Carve-Out Account of all but approximately $40,000 of funds) and deposited that money into a separate bank account under the name of CareNation at First Horizon Bank. A copy of that check is attached hereto as **Exhibit 3**.

(3) Upon discovering this latest development, Bank of America immediately commenced on September 16 such actions as were necessary to both revoke payment on the unauthorized $500,000.00 check and to completely terminate all access of CareNation and its agents to the DIP Accounts.

(4) As such, the DIP Accounts appear to be, for the moment, secure. That said, incredibly, Gaw continues to defiantly assert that he "owns" the bank accounts and there is every reason to think that he will continue his efforts to access and control these accounts, for purposes of moving the funds over to accounts under his control, one way or another.

# ARGUMENT

That Gaw would represent himself to be the "Chairman" of the Debtor and, using its name and tax identification number, fraudulently[2] apply for a PPP loan in the name of the Debtor, demonstrates a level of either stunning ignorance of the terms of the APA or a willingness to intentionally misrepresent those terms to third parties, even to the point of making sworn statements made to the government, *either of which requires this court's immediate intervention*. By commingling in the Dip Carve-out Account both CDS' money improperly diverted from the Debtor's Operating Account and the proceeds of the fraudulently obtained PPP loan (for which Bank of America has now formally demanded immediate and full repayment from Gaw and CareNation based on the fraudulent nature of the application), Gaw and CareNation have created serious problems that will require this court's involvement for some time to come, and will necessarily delay the dismissal of this case.

In addition, it is shocking enough by itself that CareNation - acting through Gaw - improperly used the online CashPro® access of a terminated Capstone employee to begin secretly accessing and exercising control over the Debtor's DIP Accounts in order to divert CDS' proceeds of accounts receivable. That Gaw would then also begin signing paper checks clearly in the name of Debtor when he *knew at the time* of his signing that he was not an authorized signatory with Bank of America on the accounts demonstrates a level of brazenness that is difficult to fathom.

Perhaps most shocking, though, is Gaw's actions just two days ago when, after being served with the complaint and motion - and perhaps most importantly, after this Court's order

---

[2] Besides the obvious misrepresentation that Gaw is Chairman of the Debtor in Possession, the application contains misrepresentations concerning the Debtor's qualifications to obtain a loan. For instance, Debtor is in bankruptcy, of course, and is in fact delinquent on a SBA guaranteed loan - the allowed claim of Newtek Small Business Finance [Claim 61] is a SBA guaranteed loan.

4

Case 3:20-ap-90140   Doc 10   Filed 09/17/20   Entered 09/17/20 10:31:52   Desc Main
Document      Page 4 of 6

setting a preliminary injunction hearing in short order - he signed and deposited into a separate account of CareNation at First Horizon Bank a check to CareNation for $500,000.00 effectively draining all money in the DIP Carve-Out Account. While it is certainly a positive development that Bank of America has taken such actions on September 16 to both terminate Gaw's and CareNation's access to the DIP Accounts and to recover for those DIP Accounts the fraudulently signed $500,000.00 check, this court's involvement is nonetheless necessary. In fact, Gaw's brazen actions over the past few days demonstrate why an order from this court is more necessary than ever. Absent an order from this court affirmatively prohibiting CareNation and its agents (including Gaw) from further attempts to regain access to the accounts or write checks, Gaw and CareNation could simply interfere with this court's jurisdiction by filing a new action in state court to try to force Bank of America to allow him access (to say nothing of extra-judicial measures that it is reasonable to believe Gaw might attempt, based on his actions over the past few days), which court would of course have none of the background necessary to understand the myriad bankruptcy issues implicated by Gaw's actions.

CDS sought an expedited hearing on a motion for preliminary injunction hearing, instead of seeking an *ex parte* TRO, on the assumption that no established business with a fixed location, thousands of clients and many employees, would ever dream of attempting to circumvent the ability of this court to address these issues during the brief period of time between the filing of the motion and the court's ruling on same. Clearly, in retrospect, *ex parte* relief is precisely what would have been warranted given Gaw's brazen actions of effectively emptying the Carve-Out Account of money nearly half of which is that of CDS, by use of a check for which he knew the Bank did not recognize him as an authorized signatory, and in the face of a pending injunction hearing to address this very sort of conduct. While it is too late to seek *ex parte* relief at this stage,

5

these facts demonstrate that an order of this court not only restraining Gaw's actions but affirmatively imposing on him an obligation to surrender all checks to DIP Accounts in his possession is necessary, in order that future violations by Gaw and/or CareNation may be addressed in the context of a contempt motion.

Respectfully submitted,

/s/ *Daniel H. Puryear*
Daniel H. Puryear, # 18190
Puryear Law Group PLLC
104 Woodmont Boulevard, Suite 201
Nashville, TN 37205
615-255-4859 (phone)
615-630-6602 (fax)
dpuryear@puryearlawgroup.com

*Counsel for CDS Business Services, Inc. d/b/a Newtek Business Credit*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed electronically on September 17, 2020. Notice of this filing was sent by operation of the Court's electronic filing system to all those parties specifically requesting electronic service and as indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

*/s/ Daniel H. Puryear*
Daniel H. Puryear