

# BANK OF AMERICA

## Paycheck Protection Program Document Requirements

Applicants must provide all required supporting documentation (does not include promissory notes) by 5:00p.m. ET on July 31 in order for their application to proceed.

We will end all application processing at 5:00 p.m. ET on August 7. Clients who applied, but have not received a SBA loan number by the time of the SBA's August 8 cutoff, will be notified their application will not proceed and has been closed.

| Business Legal Name / Applicant | Business/Applicant TIN (EIN, SSN) |
|---|---|
| Capstone Pediatrics PLLC | ████ 1552 |

To be considered for the Paycheck Protection Program applicants must provide the following to the Bank:
- This signed and completed form with Items 1, 2 & 3 set forth below completed.
- The Paycheck Protection Program Application Addendum
- Required payroll documentation to support your Maximum Loan Amount calculation as calculated in Item 3 below ("Paycheck Protection Program Loan Amount Template"). A reference list of Required Payroll Documentation can be found in the PPP Documentation Reference Sheet.

Please complete this document and upload it, along with the Paycheck Protection Program Application Addendum and the required payroll documentation, into your CashPro portal.

*We strongly recommend that you upload all required documents to CashPro at one time (Very important!) so your application can be processed.*

1. Bank of America business checking account number for funds disbursement upon approval

Account number: ████ 6239

2. Applicant Ownership Information

| List all owners of 20% or more of the equity of the Applicant. Add additional rows if necessary[1] | Date of Birth MM/DD/YYYY |
|---|---|
| C M Gaw | 10/10/67 |
|  |  |
|  |  |
|  |  |

---

[1] Names should match with Applicant Ownership on Paycheck Protection Program Borrower Application Form

Page 1 | 9 Version 12 (7/06/2020)

Case 3:20-ap-90140  Doc 10-2  Filed 09/17/20  Entered 09/17/20 10:31:52  Desc
Exhibit P{PP Loan  Page 1 of 15



3. Complete the Paycheck Protection Program Loan Amount Template below

If the Applicant is an organization with employees who file Tax From 940, you must fill out this form.

Please refer to Small Business Administration's Interim Final Rule docket No. SBA-2020-0015, as revised by SBA's Interim Final Rule doc. No. SBA 2020-0035, for a complete description of each of these categories and sample calculations.

**Maximum Loan Amount**
*Represents the maximum amount a qualified applicant may apply for*

| Maximum Loan Amount | 2019/TTM Period | Average Monthly |
|---|---|---|
| Payroll Costs* | | |
| 1. Salaries, wages, commissions, vacation and sick pay** | $2,748,654.65 | $229,054.55 |
| 2. Less aggregate amount included in #1 for an employee whose principal residence is outside the US | $ | $ |
| 3. Less any compensation paid to an employee in excess of an annual salary of $100,000 included in #1 | $ | $ |
| 4. Payment for the provision of employee benefits including health care and retirement | $306,000 | $25,500 |
| 5. State/Local Taxes on Employee Compensation | $ | $ |
| 6. *Subtotal* | $3,054,654.65 | $254,554.55 |
| 7. Multiply subtotal by 2.5 | | $ |
| 8. Add outstanding Economic Injury Disaster Loan (EIDL) amount (net of advance on an EIDL COVID-19 loan) made between January 31, 2020 and April 3, 2020. | | $ |
| 9. MAXIMUM LOAN AMOUNT (Cannot exceed $10 million) | | $636,386.37 |

\* Please refer to Section 2(f) of the Small Business Administration's Interim Financial Doc. No. SBA-2020-0015 (13 CFR Part 120), as revised by the SBA's Interim Final Rule doc. No. SBA-2020-0035 (13 CFR Part 120) for a complete description of the items included in and excluded from payroll costs and for sample calculations.

\*\* For seasonal businesses, the Applicant may elect to instead use average monthly payroll for the time period between February 15, 2019 and June 30, 2019, excluding costs over $100,000 on an annualized basis for each employee. A seasonal employer may alternatively elect to determine its maximum loan amount as the average total monthly payments for payroll during any consecutive 12-week period between May 1, 2019 and September 15, 2019. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis for each employee.

[CONTINUE TO NEXT PAGE]



**Reminder: Paycheck Protection Program loan proceeds can only be used for certain purposes.**

As of June 5, 2020, Paycheck Protection Program loan proceeds, under the CARES Act, as amended by the Paycheck Protection Program Flexibility Act of 2020, can only be used for the following:

> Payroll costs (as defined in the CARES Act and Section 2.f of the Small Business Administration's Interim Final Rule Docket No. SBA-2020-0015); costs related to the continuation of group health care benefits during periods of paid sick, medical or family leave, and insurance premiums; mortgage interest payments (but not mortgage prepayments or principal payments); rent payments; utility payments; interest payments on any other debt obligations that were incurred before February 15, 2020; and/or refinancing an SBA EIDL loan made between January 31, 2020 and April 3, 2020.

If you use the proceeds for unauthorized purposes, the SBA has stated that:

> If you use PPP funds for unauthorized purposes, SBA will direct you to repay those amounts. If you knowingly use the funds for unauthorized purposes, you will be subject to additional liability such as charges for fraud. If one of your shareholders, members or partners uses PPP funds for unauthorized purposes, SBA will have recourse against the shareholder, member, or partner for the unauthorized use.

You should check SBA or visit the U.S. Treasury Website on Assistance for Small Businesses frequently for any additional guidance that may be issued.

By signing below, I certify that (1) I am the authorized representative of the Applicant and I am authorized to make the certifications in this document, including with respect to the Applicant and each owner of 20% or more of the Applicant's equity; (2) the information provided herein and the information provided in all supporting documents and forms is true and accurate; (3) I, as an authorized representative of the Applicant, have read and understand the applicable Paycheck Protection Program rules and guidance, including FAQ #31 from SBA's Paycheck Protection Program Frequently Asked Questions; (4) the Applicant remains eligible to receive a loan under the Paycheck Protection Program established by Section 1102 of the Coronavirus Aid, Relief, and Economic Security Act, as amended by the Paycheck Protection Program Flexibility Act of 2020, the related rules and SBA guidance (including FAQ #31) relating thereto; and (5) the Applicant would like Bank of America to submit its application to the SBA. I acknowledge that any false statements are punishable under the law.

_____  
Signature of Authorized Representative of Applicant

_____  
Print Name: C M Gaw

_____  
Date: 7/30/20

_____  
Title: Authorized Representative — Chairman



Paycheck Protection Program Application Addendum

Applicants must provide all required supporting documentation (does not include promissory notes) by 5:00p.m. ET on July 31 in order for their application to proceed.

We will end all applications processing at 5:00 p.m. ET on August 7. Clients who applied, but have not received a SBA loan number by the time of the SBA's August 8 cutoff, will be notified their application will not proceed and has been closed.

| Business Legal Name ("Applicant") | DBA or Tradename if Applicable |
|---|---|
| Capstone Pediatrics PPLC | |

PLEASE CONFIRM LOAN AMOUNT.

- The Paycheck Protection Program Loan is calculated by multiplying your "Average Monthly Payroll" by 2.5 then adding your EIDL amount, net of advance (if applicable).
- For purposes of calculating "Average Monthly Payroll", most Applicants will use the average monthly payroll for 2019, excluding costs over $100,000 on an annualized basis for each employee.
- For seasonal businesses, the applicant may elect to instead use average monthly payroll for the time period between February 15, 2019 and June 30, 2019, or any 12-week period between May 1, 2019 and September 15, 2019, excluding costs over $100,000 on an annualized basis for each employee.
- For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis for each employee.
- If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020, less the amount of any "advance" under an EIDL COVID-19 loan, to Loan Request as indicated on the form.
- The above guidance is directional. Please refer to the U.S Treasury's Website on Assistance for Small Businesses for official guidelines.
- Please review the instructions on the SBA's application form.

Average Monthly Payroll:

$ 254,554.55

Average Monthly Payroll X2.5 + EIDL, Net of Advance (if Applicable) Equals Loan Request:

$ 636,386.37

[CONTINUE TO NEXT PAGE]

1 | v 14  7.06.2020



PLEASE ANSWER THE FOLLOWING ABOUT YOUR BUSINESS.

*If the following four questions are answered "Yes," the loan will not be approved.*

Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy?

☐ Yes  ☑ No

Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government?

☐ Yes  ☑ No

Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction?

☐ Yes  ☑ No   Initial here to confirm your response  *CMG*

Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, or within the last year, for any other felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)?

☐ Yes  ☑ No   Initial here to confirm your response  *CMG*

### By Signing Below, You Make the Following Representations, Authorizations, and Certifications

CERTIFICATIONS AND AUTHORIZATIONS

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any loan received by the Applicant under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses loans under the Paycheck Protection Program Rule.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

2 | v 14  7.06.2020



**Certifications Regarding Beneficial Owner**

An authorized individual (officer, member/manager, partner, owner) of a business entity opening an account must certify the name(s) and other requested information provided about all persons and/or entities who are considered "Beneficial Owners", that is, a person or persons who may own or control, or could control, the entity.

As required by US Federal Regulations, this information helps law enforcement fight financial crimes.

By signing below I certify to the best of my knowledge that the information included in the most recent Beneficial Ownership Certification provided to the Bank is complete and correct in all respects.

CERTIFICATIONS

The authorized representative of the Applicant must certify in good faith to all of the below by initialing next to each one:

_CmG_ ✓ The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

_CmG_ ✓ Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

_CmG_ ✓ The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

_CmG_ ✓ The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the 24-week period following this loan.

_CmG_ ✓ I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 40% of the forgiven amount may be for non-payroll costs.

_CmG_ ✓ During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

_CmG_ ✓ I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

_CmG_ ✓ I acknowledge that the lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

_CmG_ ✓ **(If Applicable) For faith-based organizations**: The Applicant claims an exemption from all SBA affiliation rules applicable to Paycheck Protection Program loan eligibility because the Applicant has made a reasonable, good faith determination that the Applicant qualifies for a religious exemption under 13 C.F.R. 121.103(b)(10), which says that "[t]he relationship of a faith-based organization to another organization is not considered an affiliation with the other organization…if the relationship is based on a religious teaching or belief or otherwise constitutes a part of the exercise of religion."

[CONTINUE TO NEXT PAGE]



ADDITIONAL INFORMATION

If the Applicant or any owner of the Applicant is an owner of any other business, or has common management with, any other business, list all such businesses and describe the relationship on Addendum A.

If the Applicant received an SBA Economic Injury Disaster Loan (EIDL) between January 31, 2020 and April 3, 2020, please provide details on Addendum B. If yes, include the EIDL number, the date of the EIDL from the SBA, the amount of any EIDL advance/ grant, and, if applicable, evidence of repayment.

By signing below, I certify that (1) I am the authorized representative of the Applicant and I am authorized to make the certifications in this document, including with respect to the Applicant and each owner of 20% or more of the Applicant's equity; (2) the information provided herein and the information provided in all supporting documents and forms is true and accurate; (3) I, as an authorized representative of the Applicant, have read and understand the applicable Paycheck Protection Program rules and guidance, including FAQ #31 from SBA's Paycheck Protection Program Frequently Asked Questions; (4) the Applicant remains eligible to receive a loan under the Paycheck Protection Program established by Section 1102 of the Coronavirus Aid, Relief, and Economic Security Act, as amended by the Paycheck Protection Program Flexibility Act of 2020, the related rules and SBA guidance (including FAQ #31) relating thereto; and (5) the Applicant would like Bank of America to submit its application to the SBA. I acknowledge that any false statements are punishable under the law.

_____  
Signature of Authorized Representative of Applicant

_____7/30/20_____  
Date

CM Gaw  
Print Name

Chairman  
Title: Authorized Representative

4 | v 14  7.06.2020



Addendum A

If the Applicant or any owner of the Applicant is an owner of any other business, or has common management with, any other business, list all such businesses and describe the relationship here:

5 | v 14  7.06.2020



Addendum B

If the Applicant received an SBA Economic Injury Disaster Loan (EIDL) between January 31, 2020 and April 3, 2020, please include the EIDL loan number, the date the Applicant received the EIDL loan from the SBA, the amount of any EIDL advance/ grant, and, if applicable, evidence of repayment.



[This is an excerpt from the Small Business Administration Borrower Application Form]

**Paycheck Protection Program
Borrower Application Form
Revised June 24, 2020**

### Purpose of this form:

This form is to be completed by the authorized representative of the Applicant and *submitted to your SBA Participating Lender*. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

### Instructions for completing this form:

With respect to "purpose of the loan," payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019, excluding costs over $100,000 on an annualized basis for each employee. For seasonal businesses, the Applicant may elect to instead use average monthly payroll for the time period between February 15, 2019 and June 30, 2019 or any 12-week period between May 1, 2019 and September 15, 2019, excluding costs over $100,000 on an annualized basis for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis for each employee.

If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020, less the amount of any "advance" under an EIDL COVID-19 loan, to Loan Request as indicated on the form.
All parties listed below are considered owners of the Applicant as defined in 13 CFR § 120.10, as well as "principals":

- For a sole proprietorship, the sole proprietor;
- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;
- For a corporation, all owners of 20% or more of the corporation;
- For limited liability companies, all members owning 20% or more of the company; and
- Any Trustor (if the Applicant is owned by a trust).

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to: Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 USC Section 636(a)(1)(B) of the Small Business Act (the Act).

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Act using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) foreclose on collateral or take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – Subject to certain exceptions, SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that will be automatically released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers (and their officers, directors, stockholders or partners), the collateral pledged to secure the loan, the amount of the loan, its purpose in general terms and the maturity. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined, forced to cease operations, or prevented from starting operations. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549; (2 CFR Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.



# Promissory Note

| Date | Loan Amount | Interest Rate |
|---|---|---|
| August 2, 2020 | $636,386.00 | 1.00% fixed per annum |

This Promissory Note ("Note") sets forth and confirms the terms and conditions of a term loan to Capstone Pediatrics, PLLC (whether one or more than one, "Borrower") from Bank of America, N.A., a national banking association having an address of P.O. Box 15220, Wilmington, DE 19886-5220 (together with its agents, affiliates, successors and assigns, the "Bank") for the Loan Amount and at the Interest Rate stated above (the "Loan"). The Loan is made pursuant to the Paycheck Protection Program under the Coronavirus Aid, Relief, and Economic Security Act (as amended by the Paycheck Protection Program Flexibility Act of 2020 and as otherwise amended from time to time, the "CARES Act"). The funding of the Loan is conditioned upon approval of Borrower's application for the Loan and Bank's receiving confirmation from the SBA that Bank may proceed with the Loan. The date on which the funding of the Loan takes place is referred to as the "Funding Date". The "Deferment Period" commences on the Funding Date and ends on the earlier of (i) the date on which the amount of forgiveness as determined under section 1106 of the CARES Act is remitted to the Bank (the "Forgiveness Remittance Date"), (ii) the date on which Bank provides notice to Borrower that Bank has determined Borrower is not entitled to forgiveness and (iii) the Forgiveness Period Outside Date (as defined below) if Borrower fails to apply for forgiveness on or before such date. Promptly after the end of the 'covered period' as determined in accordance with Section 1106 of the CARES Act, and no later than ten months after the last day of the Forgiveness Covered Period (the "Forgiveness Period Outside Date"), Borrower shall apply to Bank for loan forgiveness. If the SBA confirms full and complete forgiveness of the unpaid balance of the Loan, and reimburses Bank for the total outstanding balance, principal and interest, Borrower's obligations under the Loan will be deemed fully satisfied and paid in full. If the SBA does not confirm forgiveness of the Loan, or only partly confirms forgiveness of the Loan, or Borrower fails to apply for loan forgiveness by the Forgiveness Period Outside Date, Borrower will be obligated to repay to the Bank the total outstanding balance remaining due under the Loan, including principal and interest (the "Loan Balance"), and in such case, Bank will establish the terms for repayment of the Loan Balance in a separate letter to be provided to Borrower, which letter will set forth the Loan Balance, the amount of each monthly payment, the interest rate (not in excess of a fixed rate of one per cent (1.00%) per annum), the term of the Loan, and the applicable maturity date. The applicable maturity date will be the maturity date as established by the SBA. If the SBA establishes a range of allowable maturity dates, the lowest term in the range will apply (unless extended by the Bank in its discretion); and if the SBA does not establish a maturity date or range of allowable maturity dates, the maturity date will be five (5) years. No principal or interest payments will be due prior to the end of the Deferment Period, though interest will accrue during the Deferment Period. Borrower promises, covenants and agrees with Bank to repay the Loan in accordance with the terms for repayment, including the maturity date as determined in accordance with the procedures described above, as set forth in that letter (the "Repayment Letter"). Payments greater than the monthly payment or additional payments may be made at any time without a prepayment penalty but shall not relieve Borrower of its obligations to pay the next succeeding monthly payment.

In consideration of the Loan received by Borrower from Bank, Borrower agrees as follows:

1. DEPOSIT ACCOUNT/USE OF LOAN PROCEEDS: Borrower is required to maintain a deposit account with Bank of America, N.A. (the "Deposit Account") until the Loan is either forgiven in full or the Loan is fully paid by Borrower. Borrower acknowledges and agrees that the proceeds of the Loan shall be deposited by Bank into the Deposit Account. The Loan proceeds are to not be used by Borrower for any illegal purpose and Borrower represents to the Bank that it will derive material benefit, directly and indirectly, from the making of the Loan.

2. DIRECT DEBIT. If all or any portion of the Loan is not forgiven and a Loan Balance remains after the last day of the Deferment Period (or, if Borrower does not apply for forgiveness, on the Forgiveness Period Outside Date), Borrower agrees that on the due date of any amount due as set forth in the Repayment Letter, Bank will debit the amount due from the Deposit Account established by Borrower in connection with this Loan. Should there be insufficient funds in the Deposit Account to pay all such sums when due, the full amount of such deficiency be shall be immediately due and payable by Borrower.

3. INTEREST RATE: Bank shall charge interest on the unpaid principal balance of the Loan at the interest rate set forth above under "Interest Rate" from the Funding Date until the date that the Loan is paid in full. For the avoidance of doubt, any interest that accrued prior to the Forgiveness Remittance Date but is not repaid by the SBA in connection with remittance of the forgiven amount of the Loan on the Forgiveness Remittance Date shall be payable by you in accordance with the Repayment Letter.

4. REPRESENTATIONS, WARRANTIES AND COVENANTS. (1) Borrower represents and warrants to Bank, and covenants and agrees with Bank, that: (i) Borrower has read the statements included in the Application, including the Statements Required by Law and Executive Orders, and Borrower understands them. (ii) Borrower was and remains eligible to receive a loan under the rules and guidance issued by the SBA implementing the Paycheck Protection Program under Division A, Title I of the CARES Act (the "Paycheck Protection Program Rule") in effect at the time Borrower submitted to Bank its Paycheck Protection Program Application Form (the "Application"). (iii) Borrower (a) is an independent contractor, eligible self-employed individual, or sole proprietor or (b) employs no more than the greater of 500 employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for Borrower's industry. (iv) Borrower will comply whenever applicable, with the civil rights and other limitations in the Application. (v) All proceeds of the Loan will be used only for business-related purposes as specified in the Application and consistent with the Paycheck Protection Program Rule. (vi) To the extent feasible, Borrower will purchase only American-made equipment and products. (vii) Borrower is not engaged in any activity that is illegal under federal, state or local law. (viii) Borrower certifies that any loan received by Borrower under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 that will remain outstanding after funding of this Loan was for a purpose other than paying payroll costs and other allowable uses of loan proceeds under the Paycheck Protection Program Rule. (ix) Borrower was in operation on February 15, 2020 and had employees for whom Borrower paid salaries and payroll taxes or paid independent contractors (as reported on Form(s) 1099-MISC). (x) The current economic uncertainty makes the request

for the Loan necessary to support the ongoing operations of Borrower (as such representation is further explained in SBA guidance with respect to the Paycheck Protection Program). (xi) All proceeds of the Loan will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule and Borrower acknowledges that if the funds are knowingly used for unauthorized purposes, the federal government may hold Borrower and/or Borrower's authorized representative legally liable, such as for charges of fraud. (xii) Borrower has provided Bank true, correct and complete information demonstrating that Borrower had employees for whom Borrower paid salaries and payroll taxes on or around February 15, 2020. (xiii) Borrower has provided to Bank all documentation available to Borrower on a reasonable basis verifying the dollar amounts of average monthly payroll costs for the calendar year 2019, which documentation shall include, as applicable, copies of payroll processor records, payroll tax filings and/or Form 1099-MISC. (xiv) Borrower will promptly provide to Bank (a) any additional documentation that Bank requests in order to verify payroll costs and (b) documentation verifying the number of full-time equivalent employees on payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the applicable "covered period" (as determined in accordance with Section 1106 of the CARES Act) following the Loan, including all such documentation required under the forgiveness application promulgated by the SBA. (xv) Borrower acknowledges that (a) loan forgiveness will be provided by the SBA for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and at least 60% of the covered loan amount must be used for payroll costs. (xvi) During the period beginning on February 15, 2020 and ending on December 31, 2020, Borrower has not and will not receive any other loan under the Paycheck Protection Program, except for any increase that was expressly permitted under the Paycheck Protection Program Rule. (xvii) Borrower certifies that the information provided in the Application and the information that Borrower provided in all supporting documents and forms is true and accurate in all material respects. Borrower acknowledges that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000. (xviii) Borrower understands, acknowledges and agrees that Bank can share any tax information received from Borrower or any Owner with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews. (xix) Neither Borrower nor any Owner, is presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy. (xx) Neither Borrower, nor any Owner, nor any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government. (xxi) Neither Borrower, nor any Owner, is an owner of any other business or has common management with any other business, except as disclosed to the Bank in connection with the Borrower's Application. (xxii) Borrower did not receive an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020, except as disclosed to the Bank in connection with the Borrower's Application. (xxiii) Neither Borrower (if an individual), nor any individual owning 20% or more of the equity of Borrower (each, an "Owner"), is subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, on probation or parole. (xxiv) Neither Borrower (if an individual), nor any Owner, has been incarcerated, on probation, on parole; presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction; or has been convicted of a felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance within the last five years or any other felony within the last year. (xxv) The United States is the principal place of residence for all employees of Borrower included in Borrower's payroll calculation included in the Application. (xxvi) The Borrower correctly indicated on its Application whether it is a franchise that is listed in the SBA's franchise directory. (xxvii) If Borrower is claiming an exemption from all SBA affiliation rules applicable to Paycheck Protection Program loan eligibility under the religious exemption to the affiliation rules, Borrower has made a reasonable, good faith determination that it qualifies for such religious exemption under 13 C.F.R. 121.103(b)(10), which provides that "[t]he relationship of a faith-based organization to another organization is not considered an affiliation with the other organization…if the relationship is based on a religious teaching or belief or otherwise constitutes a part of the exercise of religion." (2) At all times during the term the of the Loan, Borrower represents and warrants to the Bank, that (i) if Borrower is anything other than a natural person, it is duly formed and existing under the laws of the state or other jurisdiction where organized; (ii) this Note, and any instrument or agreement required under this Note, are within Borrower's powers, have been duly authorized, and do not conflict with any of its organizational papers; (iii) the information included in the Beneficial Ownership Certification most recently provided to the Bank, if applicable, is true and correct in all respects; and (iv) in each state in which Borrower does business, it is properly licensed, in good standing, and, where required, in compliance with fictitious name (e.g. trade name or d/b/a) statutes. IF THE FUNDING DATE IS AFTER THE DATE OF THIS NOTE, BORROWER AGREES THAT BORROWER SHALL BE DEEMED TO HAVE REPEATED AND REISSUED, IMMEDIATELY PRIOR TO THE FUNDING ON THE FUNDING DATE, THE REPRESENTATIONS, WARRANTIES, COVENANTS AND AGREEMENTS SET FORTH ABOVE IN THIS PARAGRAPH.

5. EVENTS OF DEFAULT: If all or any portion of the Loan is not forgiven and a Loan Balance remains after the first to occur of the Forgiveness Remittance Date and the Forgiveness Period Outside Date, then from the date the Repayment Letter is sent to Borrower until the Loan Balance is fully paid, the occurrence and continuation of any of the following events shall constitute a default hereunder: (i) insolvency, bankruptcy, dissolution, issuance of an attachment or garnishment against Borrower; (ii) failure to make any payment when due under the Loan or any or all other loans made by Bank to Borrower, and such failure continues for ten (10) days after it first became due; (iii) failure to provide current financial information promptly upon request by Bank; (iv) the making of any false or materially misleading statement on any application or any financial statement for the Loan or for any or all other loans made by Bank to Borrower; (v) Bank in good faith believes the prospect of payment under the Loan or any or all other loans made by Bank to Borrower is impaired; (vi) Borrower under or in connection with the Loan or any or all other loans made by Bank to Borrower fails to timely and properly observe, keep or perform any term, covenant, agreement, or condition herein or therein; (vii) default shall be made with respect to any other indebtedness for borrowed money of Borrower, if the default is a failure to pay at maturity or if the effect of such default is to accelerate the maturity of such indebtedness for borrowed money or to permit the holder or obligee thereof or other party thereto to cause any such indebtedness for borrowed money to become due prior to its stated maturity; (viii) the Bank in its sole discretion determines in good faith that an event has occurred that materially and adversely affects Borrower; (ix) any change shall occur in the ownership of the Borrower; (x) permanent cessation of Borrower's business operations; (xi) Borrower, if an individual, dies, or becomes disabled, and such disability prevents the Borrower from continuing to operate its business; (xii) Bank receives notification or is otherwise made aware that Borrower, or any affiliate of Borrower, is listed as or appears on any lists of known or suspected terrorists or terrorist organizations provided to Bank by the U.S. government under the USA Patriot Act of 2001; and (xiii) Borrower fails to maintain the Deposit Account with the Bank. In addition, a default shall occur immediately hereunder if the SBA demands repayment in full by Borrower of the Loan

prior to the maturity date hereof for any reason, including, without limitation, as a result of an SBA determination that Borrower was ineligible for this Loan for any reason, including as a result of an improper necessity certification, eligibility certification or other certification in the Application for the Loan.

6. REMEDIES: Upon the occurrence of a default described in Section 5 above, all or any portion of the entire amount owing on the Loan, and any and all other loans made by Bank to Borrower, shall, at Bank's option, become immediately due and payable without demand or notice. Upon a default, Bank may exercise any other right or remedy available to it at law or in equity. All persons included in the term "Borrower" are jointly and severally liable for repayment, regardless of to whom any advance of credit was made. Borrower shall pay any costs Bank may incur including without limitation reasonable attorney's fees and court costs should the Loan and/or any and all other loans made by Bank to Borrower be referred to an attorney for collection to the extent permitted under applicable state law. EACH PERSON INCLUDED IN THE TERM BORROWER WAIVES ALL SURETYSHIP AND OTHER SIMILAR DEFENSES TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW.

7. CREDIT INVESTIGATION: If the Loan is not forgiven and a Loan Balance remains, then from the date the Repayment Letter is sent to Borrower until the Loan Balance is fully paid, Borrower authorizes Bank and any of its affiliates at any time to make whatever credit investigation Bank deems is proper to evaluate Borrower's credit, financial standing and employment and Borrower authorizes Bank to exchange Borrower's credit experience with credit bureaus and other creditors Bank reasonably believes are doing business with Borrower. Borrower also agrees to furnish Bank with any financial statements Bank may request at any time and in such detail as Bank may require.

8. NOTICES: Borrower's request for Loan forgiveness, and the documentation that must accompany that request, shall be submitted to Bank by transmitting the communication to the electronic address, website, or other electronic transmission portal provided by Bank to Borrower. Otherwise, all notices required under this Note shall be personally delivered or sent by first class mail, postage prepaid, or by overnight courier, to the addresses on the signature page of this Note, or sent by facsimile to the fax number(s) listed on the signature page, or to such other addresses as the Bank and the Borrower may specify from time to time in writing (any such notice a "Written Notice"). Written Notices shall be effective (i) if mailed, upon the earlier of receipt or five (5) days after deposit in the U.S. mail, first class, postage prepaid, (ii) if telecopied, when transmitted, or (iii) if hand-delivered, by courier or otherwise (including telegram, lettergram or mailgram), when delivered. In lieu of a Written Notice, notices and/or communications from the Bank to the Borrower may, to the extent permitted by law, be delivered electronically (i) by transmitting the communication to the electronic address provided by the Borrower or to such other electronic address as the Borrower may specify from time to time in writing, or (ii) by posting the communication on a website and sending the Borrower a notice to the Borrower's postal address or electronic address telling the Borrower that the communication has been posted, its location, and providing instructions on how to view it (any such notice, an "Electronic Notice"). Electronic Notices shall be effective when presented to the Borrower, or is sent to the Borrower's electronic address or is posted to the Bank's website. To retain a copy for your records, please download and print or save a copy to your device.

9. CHOICE OF LAW; JURISDICTION; VENUE. (1) At all times that Bank is the holder of this Note, except to the extent that any law of the United States may apply, this Note shall be governed and interpreted according to the internal laws of the state of Borrower's principal place of business (the "Governing Law State"), without regard to any choice of law, rules or principles to the contrary. However, the charging and calculating of interest on the obligations under this Note shall be governed by, construed and enforced in accordance with the laws of the state of North Carolina and applicable federal law. Nothing in this paragraph shall be construed to limit or otherwise affect any rights or remedies of Bank under federal law. Borrower and Bank agree and consent to be subject to the personal jurisdiction of any state or federal court located in the Governing Law State so that trial shall only be conducted by a court in that state. (2) Notwithstanding the foregoing, when SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

10. MISCELLANEOUS. The Loan may be sold or assigned by Bank without notice to Borrower. Borrower may not assign the Loan or its rights hereunder to anyone without Bank's prior written consent. If any provision of this Note is contrary to applicable law or is found unenforceable, such provision shall be severed from this Note without invalidating the other provisions thereof. Bank may delay enforcing any of its rights under this Note without losing them, and no failure or delay on the part of Bank in exercising any right, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, power or privilege hereunder preclude any other or future exercise thereof or the exercise of any other right, power or privilege. Bank, by its acceptance hereof, and the making of the Loan and Borrower understand and agree that this Note constitutes the complete understanding between them. This Note shall be binding upon Borrower, and its successors and assigns, and inure to the benefit of Bank and its successors and assigns. This Note automatically may be amended from time to time to comply with any express requirements under any amendment of the CARES Act or any rules or guidance promulgated with respect thereto to the extent applicable to this Note, in each case without the requirement of any consent of or notice to Borrower.

11. BORROWING AUTHORIZED. The signer for Borrower represents, covenants and warrants to Bank that he or she is certified to borrow for the Borrower and is signing this Note as the duly authorized sole proprietor, owner, sole shareholder, officer, member, managing member, partner, trustee, principal, agent or representative of Borrower, and further acknowledges and confirms to Bank that by said signature he or she has read and understands all of the terms and provisions contained in this Note and agrees and consents to be bound by them. This Note and any instrument or agreement required herein, are within the Borrower's powers, have been duly authorized, and do not conflict with any of its organizational papers. The individuals signing this Agreement on behalf of each Borrower are authorized to sign such documents on behalf of such entities. For purposes of this Note only, the Bank may rely upon and accept the authority of only one signer on behalf of the Borrower, and for this Note, this resolution supersedes and replaces any prior and existing contrary resolution provided by Borrower to Bank.

12. ELECTRONIC COMMUNICATIONS AND SIGNATURES. This Note and any document, amendment, approval, consent, information, notice, certificate, request, statement, disclosure or authorization related to this Note (each a "Communication"), including Communications required to be in writing, may, if agreed by the Bank, be in the form of an Electronic Record and may be executed using Electronic Signatures, including, without limitation, facsimile and/or .pdf. The Borrower agrees that any Electronic Signature (including, without limitation, facsimile or .pdf) on or associated with any Communication shall be valid and binding on the Borrower to the same extent as a manual, original signature, and that any

Communication entered into by Electronic Signature, will constitute the legal, valid and binding obligation of the Borrower enforceable against the Borrower in accordance with the terms thereof to the same extent as if a manually executed original signature was delivered to the Bank. Any Communication may be executed in as many counterparts as necessary or convenient, including both paper and electronic counterparts, but all such counterparts are one and the same Communication. For the avoidance of doubt, the authorization under this paragraph may include, without limitation, use or acceptance by the Bank of a manually signed paper Communication which has been converted into electronic form (such as scanned into PDF format), or an electronically signed Communication converted into another format, for transmission, delivery and/or retention. The Bank may, at its option, create one or more copies of any Communication in the form of an imaged Electronic Record ("Electronic Copy"), which shall be deemed created in the ordinary course of the Bank's business, and destroy the original paper document. All Communications in the form of an Electronic Record, including an Electronic Copy, shall be considered an original for all purposes, and shall have the same legal effect, validity and enforceability as a paper record. Notwithstanding anything contained herein to the contrary, the Bank is under no obligation to accept an Electronic Signature in any form or in any format unless expressly agreed to by the Bank pursuant to procedures approved by it; provided, further, without limiting the foregoing, (a) to the extent the Bank has agreed to accept such Electronic Signature, the Bank shall be entitled to rely on any such Electronic Signature without further verification and (b) upon the request of the Bank any Electronic Signature shall be promptly followed by a manually executed, original counterpart. For purposes hereof, "Electronic Record" and "Electronic Signature" shall have the meanings assigned to them, respectively, by 15 USC §7006, as it may be amended from time to time.

13. CONVERSION TO PAPER ORIGINAL. At the Bank's discretion the authoritative electronic copy of this Note ("Authoritative Copy") may be converted to paper and marked as the original by the Bank (the "Paper Original"). Unless and until the Bank creates a Paper Original, the Authoritative Copy of this Agreement: (1) shall at all times reside in a document management system designated by the Bank for the storage of authoritative copies of electronic records, and (2) is held in the ordinary course of business. In the event the Authoritative Copy is converted to a Paper Original, the parties hereto acknowledge and agree that: (1) the electronic signing of this Agreement also constitutes issuance and delivery of the Paper Original, (2) the electronic signature(s) associated with this Agreement, when affixed to the Paper Original, constitutes legally valid and binding signatures on the Paper Original, and (3) the Borrower's obligations will be evidenced by the Paper Original after such conversion.

14. BORROWER ATTESTATION. Borrower attests and certifies to Bank that it has not provided false or misleading information or statements to the SBA or the Bank in its application for the Loan, and that the certifications, representations, warranties, and covenants made to the Bank in this Note and elsewhere relating to the Loan are true, accurate, and correct. Borrower further attests and certifies to Bank that it is has read, understands, and acknowledges that the Loan is being made under the CARES Act, and any use of the proceeds of the Loan other than as permitted by the CARES Act and related rules and guidance, or any false or misleading information or statements provided to the Bank in its application for the Loan or in this Note may subject the Borrower to criminal and civil liability under applicable state and federal laws and regulations, including but not limited to, the False Claims Act, 31 U.S.C. Section 3729, et. seq. Borrower further acknowledges and understands that this Note is not valid and effective until and unless Borrower's application for the Loan is approved and Bank's receiving confirmation from the SBA that Bank may proceed with the Loan.

**IN WITNESS WHEREOF**, I, the authorized representative of the Borrower, hereto have caused this Promissory Note to be duly executed as of the date set forth below.

BORROWER: Capstone Pediatrics, PLLC

_____
Signature of Authorized Representative of Borrower

Jonathan Garcia
Print Name

Authorized Representative
Title


STREET ADDRESS: 1420 Donelson Pike Ste B17
CITY/STATE/ZIP CODE: Nashville, TN 37217-3015