# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 3:19-bk-1971 |
| **CAPSTONE PEDIATRICS, PLLC,** | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| **CDS BUSINESS SERVICES, INC.** | ) | |
| **d/b/a NEWTEK BUSINESS CREDIT,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 3:20-ap-90140 |
| | ) | |
| | ) | |
| **AMERICA CARES TRUST d/b/a** | ) | |
| **CARENATION,** | ) | |
| | ) | |
| Defendant. | ) | |

---

**JOINT
EXPEDITED MOTION AND SUPPORTING MEMORANDUM
FOR ENTRY OF
AGREED ORDER
MODIFYING PRELIMINARY INJUNCTION, AUTHORIZING FINAL
DISBURSEMENTS TO PARTIES, GRANTING RELATED RELIEF
AND
SECOND AGREED QUALIFIED HIPAA PROTECTIVE ORDER**

---

Pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure, and Rule 9075-1 of the Local Rules of this Court, Plaintiff, CDS Business Services, Inc. doing business as Newtek Business Credit (hereinafter "**CDS**") and Defendant America Cares Trust, Inc., a Tennessee not for profit corporation doing business as CareNation (hereinafter "**CareNation**") (CDS nd CareNation the "**Parties**"), by and through the undersigned counsel, respectfully submit this Joint Expedited Motion for Entry of an

{02235760.1}  1

Agreed Order Modifying that certain "Agreed Order Granting Expedited Motion for Preliminary Injunction" (Docket Entry 12) (hereinafter the "**Preliminary Injunction**") upon the Expedited Motion of for Preliminary Injunction (Docket Entry 4) in the above-styled proceeding, Authorizing Final Disbursements to Parties, Granting Related Relief and Second Agreed Qualified HIPAA Protective Order (hereinafter the "**Omnibus Order**").

1. **Expedited Relief Requested.** The Preliminary Injunction reads in pertinent part:

> America Cares Trust (ACT), d/b/a CareNation, its agents (specifically including, but not limited to, Michael Gaw), and any party acting in concert with CareNation, are enjoined, pending further order of this court, from accessing, depositing into, withdrawing from, viewing, using, transferring into or out of, encumbering, or preventing access of Debtor Capstone Pediatrics, PLLC ("**Debtor**") to any of Debtor's DIP Accounts used or opened at any time in this case including, but not limited to, those certain Bank of America accounts in the name of Debtor bearing account numbers XXXXXXX837, XXXXXXX7579 and XXXXXXX239. In addition, and immediately upon entry of this Order, Michael Gaw of CareNation shall ensure that all checks to any of Debtor's DIP Accounts are immediately turned over to Jim Davis, Chief Restructuring officer for Debtor, at such location as Davis may direct to CareNation and/or Gaw.

The Parties move this Court to enter an expedited order, or otherwise to conduct an expedited hearing, to Order final disbursements to the Parties in the amounts specified in the proposed Omnibus Order and below, which represent all or substantially all of the amounts remaining on deposit in the Bank of America account in the name of the Debtor bearing account number XXXXXXX837 (the "**Provider Account**" as hereinafter defined). The Omnibus Order would further provide for the closing of the Provider Account.

In addition, the Omnibus Order would prescribe a process for initial production of certain billing records currently in the possession of CareNation which are necessary for CDS to proceed with collection of certain accounts receivable owed to the Debtor, Captstone Pediatrics, PLLC ("**Debtor**" or "**Capstone**"). The proposed Omnibus Order contains a process for production and reimbursement of certain costs incurred by CareNation for production, as well as a Qualified HIPAA Protective Order for the disclosure of protected health information.

Upon the granting of this relief and discharge of the Parties of their obligations under the Omnibus Order, the Parties will enter an Order dismissing this Adversary Proceeding.

**2. Need for Expedited Order.** After completing the Accounting and Reconciliation process, the Parties engaged in lengthy discussions to resolve all pending matters in this Adversary Proceeding. Both Parties have a need for expedited relief. CareNation requires the relief to ensure that there is no continued interruption of essential medical services to its pediatric patients, many of whom are infants, children and teens with chronic medical conditions requiring continuous and/or immediate treatment. CareNation requires the relief sought to begin collecting the Debtor's aged accounts receivable as soon as possible.

**3. Notice**. A copy of this expedited motion and a copy of proposed order setting hearing thereon to (1) all parties consenting to electronic service via the Court's CM/ECF system; (2) the office of the United States Trustee via email; (3) Debtor's bankruptcy counsel via email; (4) counsel of record for CDS Business Services, Inc., d/b/a NEWTEK Business Credit; (5) counsel of record for Bank of America; and (6) Michael Gigandet, Trustee.

**4. No Hearing Will Be Required/Requested Hearing Date If Deemed Necessary.** CareNation does not believe an expedited hearing is necessary for the reasons set forth below. In the event a hearing is necessary, requests a hearing upon this motion on Thursday, May 27, 2020 at 10:30 a.m. C.D.T., or as soon as possible before or after said date.

**5. Supporting Argument.**

**5.1 Stipulation of Facts for purposes of this Motion.**

Solely for the purposes of this Motion, the Parties stipulate to the facts asserted in Section 5.1, Paragraphs 1 through 8, of CDS' Expedited Motion for Preliminary Injunction (Docket Entry 4), which are incorporated by reference as if fully restated herein.

**5.2 Additional Facts in support of this Motion.**

1. Based on the bank statements of the Debtor Capstone Pediatrics, PLLC ("Capstone"), the balance remaining in the Provider Account was $104,917.25 as of May 5, 2021, and the amounts being automatically deposited into the Provider Account by third party payors has been consistently declining in recent months, to the point that only *de minimis* and sporadic deposits continue to be made. Deposits into the Provider Account for January through April, 2021 have been in the approximate amounts of $694.09 (January), $2,569.61 (February), $170.33 (March) and 226.79 (April).

2. The benefit to the Parties of keeping the Provider Account open to collect these ever-dwindling amounts is more than offset by the monthly fees being charged to the Provider Account by Bank of America, and the Parties are both better served by the Provider Account being closed. Specifically,

a. CareNation is now effectively collecting the proceeds due it from its Providers in a separate bank account established under its name, having achieved compliance by virtually all of its payors with its instructions previously provided to remit payments to that new bank account. To the extent that any payors attempt to deposit future payments due CareNation into the Provider Account, CareNation anticipates that such attempts will be infrequent based on the recent history, and the closing of the Provider Account will force future compliance by its payors that have heretofore failed to comply with its instructions to pay to the new CareNation bank account.

b. Because CDS has collected only a small fraction of the balance owed on the Capstone accounts receivable from these disbursements out of the Provider Account, and the rate of voluntary payments has dwindled to a negligible amount, CDS has obtained relief from the automatic stay to collect, and abandonment of any interest in, the Capstone Pediatrics accounts receivable outside of bankruptcy (Doc. 320 in the main bankruptcy case). CDS is preparing to send instructions to all payors to remit payments on the outstanding Capstone accounts receivable to CDS directly. As such, there is no reason that any future payments should be made into the Provider Account. To the extent that any payors do attempt to deposit future payments due CDS into the Provider Account, CDS anticipates that such attempts will be infrequent, and the closing of the Provider Account will force compliance by such payor(s) when the misdirect payment is returned to them.

3. In order to allow the Provider Account to be closed, all remaining funds therein must be disbursed. The Parties have determined that additional time and expense involved in reconciling the respective balances due to each for the Phase III and Phase IV periods are not worth the additional time and expense each Party is incurring in attempting to reconcile the balances in accordance with the procedures used as to Phases I and II, and have therefore agreed to distribute the remaining balance in the Provider Account, based on the amount of $104,917.25 in the account on May 5, 2021, as follows:

a. $97,917.25 to CareNation;

b. $7,000 to CDS; and

c. To the extent that the balance in the Provider Account in excess of the sum of subparagraphs (a) and (b) on the date of this final

distribution, 15% of the excess balance is to be paid to CareNation and 85% of such balance is to be paid to CDS;

d.  To the extent that the balance in the Provider Account is less than the sum of subparagraphs (a) and (b), the reduction in the amounts paid to each of CareNation and CDS will correspond with subsection (c). By way of example, if there is only $102,000.00 in the Provider Account on the Distribution Date, CareNation will be paid $95,437.59 and CDS will be paid $6,562.41.

4. As noted above, CDS now finds it necessary to collect the remaining Capstone accounts receivable directly from the obligated parties. CareNation is in the possession of all of the medical billing and payment records of Capstone, said records having been inadvertently left in its possession by agent(s) of Capstone after the closing of the APA. CDS needs those records in order to collect out the balance of the Capstone Accounts Receivable, and cannot effectively do so without those records. While CareNation has a need to retain and access to medical records for continued treatment of patients previously treated by Capstone, CareNation generally has no right or title to those records, or interest in the medical billing and payment records sought by CDS, does not dispute CDS' entitlement to same, and agrees to turn the records over to CDS consistent with the terms of this Order  CDS agrees to be responsible for CareNation's reasonable costs and expenses for such document production actually made, subject to the terms of this Order, and conditioned upon entry of this Order in the form submitted.

5. In furtherance of the agreed terms set forth in Section 8(b) of the proposed Omnibus Order, the parties CDS is to provide to CareNation a list of 500 patient claim files for which CareNation will be obligated to provide the most recent billing statements (also known as patient responsibility statements) available to CareNation and that, having reviewed said list in advance, CareNation will confirm whether such statements exist, and thereafter provide such available statements within the time frame set forth in the proposed Omnibus Order.

6. The records sought by CDS, however, contain certain "protected health information" as defined by the Health Insurance Portability and Accountability Act (HIPAA) 42 U. S. C. § 1320d et seq. because those records were generated prior to the closing of the Asset Purchase Agreement between CareNation and Capstone (**APA**). The disclosure of such information for the collection of medical debts is generally authorized under HIPAA.  See, e.g., 45 C.F.R. § 164.501(6)(iv). Still, CareNation desires the protection of a protective order from this Court to ensure that its turning the same over to CDS does not cause it to violate HIPAA and supporting regulations. The entry of such a protective order in this adversary proceeding is appropriate because doing so will allow CDS to pursue the full scope of relief originally sought in this Adversary Proceeding- the collection of the Capstone Accounts Receivable.

7. Upon (i) the final disbursement of the balances remaining in the Provider Account, (ii) the closing of the Provider Account to prevent any further direct deposits into same by payors, (iii) the turning over to CDS (or its designated collection agent), from time to time as requested, of all requested patient and/or claim related records of Capstone necessary to allow CDS to directly collect the accounts receivable from the obligated parties, and (iv) the resolution of any disputes between the parties concerning the amount of reasonable fees, costs and expenses owed for CDS to CareNation in conjunction with the production of such records, the Parties will have resolved all pending disputes between them at issue in this Adversary Proceeding and they will be in a position to submit an agreed order of dismissal of the claims and counterclaims in the Adversary proceeding. However, in an abundance of caution and to avoid any misunderstanding, the Parties agree and stipulate that though one installment of the balance separately due from CareNation to CDS under the APA was paid by means of an offset effectuated through the disbursements made in conjunction with the Phase I and II Reconciliations, and future payments may be set off in part as set forth herein, the balance not yet due from CareNation to CDS under the APA is not, and has never been, the subject matter of this Adversary Proceeding. Any dismissal of this Adversary Proceeding will have no effect on CDS' claim to payment of the balances due from CareNation under the APA, the respective claims, rights, defenses and obligations of the Parties under the APA, or the Parties' respective rights to seek enforcement of same when such payments come due under the APA.

### 5.3 Legal Argument.

Simply put, the relief sought is here is warranted. The Parties have stipulated to their respective rights to the remaining funds in the Provider Account. The Parties have negotiated a process for production of documents needed by CDS for collection of Capstone Accounts Receivable in a manner consistent with HIPAA. The entry of the Omnibus Order will enable the Parties to complete all tasks necessary to resolve all disputes in this Adversary Proceeding. It would also facilitate the closing of the Provider Account, the dismissal of this Adversary Proceeding, and the disposition of the bankruptcy case.

### 6. **Conclusion.**

For the reasons set forth herein, the Parties pray for the expedited entry of the proposed Omnibus Order, attached hereto as **Exhibit 1**, in accordance with LBR 9075-1(c).

Respectfully submitted,

**BONE McALLESTER NORTON PLLC**

<u>*/s/ William J. Haynes, III*</u>
Sam J. McAllester III, #03461
William J. Haynes III, #17398
511 Union Street, Suite 1600
Nashville, Tennessee 37219
(615) 238-6300 Phone
(615) 238-6301 Facsimile
Email:  smcallester@bonelaw.com
            whaynes@bonelaw.com

*Attorney for America Cares Trust, d/b/a CareNation*


<u>*/s/ Daniel H. Puryear with permission (WJH)*</u>
Daniel H. Puryear #18190
Puryear Law Group PLLC
104 Woodmont Boulevard, Suite 201
Nashville, TN 37205
615-255-4859 (phone)
615-630-6003 (fax)
dpuryear@puryearlawgroup.com

*Counsel for the Plaintiff,
CDS Business Services, Inc.
d/b/a Newtek Business Credit*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically on May 24, 2021. Notice of this filing was sent by operation of the Court's electronic filing system to all those parties specifically requesting electronic service and as indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system. In addition, notice was sent in the manner set forth in section 3, above.

Daniel H. Puryear
Puryear Law Group PLLC
104 Woodmont Boulevard, Suite 201
Nashville, TN 37205
dpuryear@puryearlawgroup.com
*Counsel for the Plaintiff,*
*CDS Business Services, Inc.*
*d/b/a Newtek Business Credit*

David W. Houston IV
Burr & Forman LLP
222 Second Avenue South, Suite 2000
Nashville, TN 37201
dhouston@burr.com
*Counsel for Capstone Pediatrics, PLLC*

Daniel Fleming
Wong Fleming
821 Alexander Road, Suite 200
Princeton, NJ 08540
dfleming@wongfleming.com
*Counsel for Bank of America, NA*

Megan Seliber
Office of the U.S. Trustee, Trial Attorney
318 Customs House, 701 Broadway
Nashville, TN 37203
megan.seliber@usdoj.com
*Counsel for the United States Trustee*

Michael Gigandet, Trustee
Law Office of Michael Gigandet
208 Centre Street
Pleasant View, TN 37146
michael@mgigandet.com

{02235760.1 }　　　　　　　　　　　　　　　　8

Case 3:20-ap-90140　Doc 73　Filed 05/24/21　Entered 05/24/21 16:35:40　Desc Main
Document　　Page 8 of 9

/s/William J. Haynes, III
William J. Haynes, III