# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Case No. 3:19-bk-1971** |
| **CAPSTONE PEDIATRICS, PLLC,** | ) | |
| | ) | **Chapter 7** |
| Debtor. | ) | |
| | ) | |
| | ) | |
| **CDS BUSINESS SERVICES, INC.** | ) | |
| **d/b/a NEWTEK BUSINESS CREDIT.** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:20-ap-90140** |
| | ) | |
| | ) | |
| **AMERICA CARES TRUST d/b/a** | ) | |
| **CARENATION,** | ) | |
| | ) | |
| Defendant. | ) | |

_____

**AGREED ORDER
MODIFYING PRELIMINARY INJUNCTION, AUTHORIZING FINAL
DISBURSEMENTS TO PARTIES, AND GRANTING RELATED RELIEF
AND
SECOND AGREED QUALIFIED HIPAA PROTECTIVE ORDER**

_____

As evidenced by the signatures of counsel for the parties to this Adversary Proceeding, this Agreed Order is entered into for purposes of memorializing certain stipulations of fact and entering effectuating orders based on same, all as are necessary to allow for resolution of all remaining issues in this Adversary Proceeding.

{02235147.2 }1

## STIPULATIONS AND FINDINGS OF FACT

1. As evidenced by the signatures of counsel for the respective parties, the following facts, findings and conclusions are agreed upon and stipulated between the parties, and therefore made as findings of fact and conclusions of law by this Court[1]1. Based on the bank statements of the Debtor Capstone Pediatrics, PLLC ("**Capstone**"), the balance remaining in the Provider Account was $104,917.25 as of May 5, 2021, and the amounts being automatically deposited into the Provider Account by third party payors has been consistently declining in recent months, to the point that only *de minimis* and sporadic deposits continue to be made. Deposits into the Provider Account for January through April, 2021 have been in the approximate amounts of $694.09 (January), $2,569.61 (February), $170.33 (March) and 226.79 (April).[2]

2. The benefit to the Parties of keeping the Provider Account open to collect these ever-dwindling amounts is more than offset by the monthly fees being charged to the Provider Account by Bank of America, and the Parties are both better served by the Provider Account being closed. Specifically,

> a. CareNation is now effectively collecting the proceeds due it from its Providers in a separate bank account established under its name, having achieved compliance by virtually all of its payors with its instructions previously provided to remit payments to that new bank account. To the extent that any payors attempt to deposit future payments due CareNation into the Provider Account, CareNation anticipates that such attempts will be infrequent based on the recent history, and the closing of the Provider Account will force future compliance by its payors that have heretofore failed to comply with its instructions to pay to the new CareNation bank account.

---

[1] Capitalized terms used herein not otherwise defined are used as defined in the Agreed Order Modifying Preliminary Injunction and Agreed Scheduling Order entered by this court on January 12, 2021 (Doc. 66).
[2] Numbers reflect gross deposits and do not take into account deductions from the account each month by Bank of America for the "Account Analysis Fee".

{02235147.2 }2

b. Because CDS has collected only a small fraction of the balance owed on the Capstone accounts receivable from these disbursements out of the Provider Account, and the rate of voluntary payments has dwindled to a negligible amount, CDS has obtained relief from the automatic stay to collect, and abandonment of any interest in, the Capstone Pediatrics accounts receivable outside of bankruptcy (Doc. 320 in the main bankruptcy case). CDS is preparing to send instructions to all payors to remit payments on the outstanding Capstone accounts receivable to CDS directly. As such, there is no reason that any future payments should be made into the Provider Account. To the extent that any payors do attempt to deposit future payments due CDS into the Provider Account , CDS anticipates that such attempts will be infrequent, and the closing of the Provider Account will force compliance by such payor(s) when the misdirect payment is returned to them.

3. In order to allow the Provider Account to be closed, all remaining funds therein must be disbursed. The Parties have determined that additional time and expense involved in reconciling the respective balances due to each for the Phase III and Phase IV periods are not worth the additional time and expense each Party is incurring in attempting to reconcile the balances in accordance with the procedures used as to Phases I and II, and have therefore agreed to distribute the remaining balance in the Provider Account, based on the amount of $104,917.25 in the account on May 5, 2021, as follows:

a. $97,917.25 to CareNation;

b. $7,000 to CDS; and

c. To the extent that the balance in the Provider Account in excess of the sum of subparagraphs (a) and (b) on the date of this final distribution, 15% of the excess balance is to be paid to CareNation and 85% of such balance is to be paid to CDS

d. To the extent that the balance in the Provider Account is less than the sum of subparagraphs (a) and (b), the reduction in the amounts paid to each of CareNation and CDS will correspond with subsection (c). By way of example, if there is only $102,000.00 in the Provider Account on the Distribution Date, CareNation will be paid $95,437.59 and CDS will be paid $6,562.41

{02235147.2 }3

Case 3:20-ap-90140    Doc 73-1    Filed 05/24/21    Entered 05/24/21 16:35:40    Desc
Exhibit 1 Proposed Agreed Omnibus Order    Page 3 of 16

4. As noted above, CDS now finds it necessary to collect the remaining Capstone accounts receivable directly from the obligated parties. CareNation is in the possession of all of the medical billing and payment records of Capstone, said records having been inadvertentlyleft in its possession by agent(s) of Capstone after the closing of the APA. CDS needs those records in order to collect out the balance of the Capstone Accounts Receivable, and cannot effectively do so without those records. While CareNation has a need to retain and access to medical records for continued treatment of patients previously treated by Capstone, CareNation generally has no right or title to those records, or interest in the medical billing and payment records sought by CDS, does not dispute CDS' entitlement to same, and agrees to turn the records over to CDS consistent with the terms of this Order CDS agrees to be responsible for CareNation's reasonable costs and expenses for such document production actually made, subject to the terms of this Order, and conditioned upon entry of this Order in the form submitted .

5. In furtherance of the agreed terms set forth in Section 8(b) of this Order, below, the parties agree that CDS has provided to CareNation a list of 500 patient claim files for which CareNation will be obligated to provide the most recent billing statements (also known as patient responsibility statements) available to CareNation and that, having reviewed said list in advance, CareNation will confirm whether such statements exist, and thereafter provide such available statements within the time frame set forth below.

6. The records sought by CDS, however, contain certain "protected health information" as defined by the Health Insurance Portability and Accountability Act (**HIPAA**) 42 U.S.C. § 1320d *et seq*. Because those records were generated prior to the closing of the Asset Purchase Agreement between CareNation and Capstone (**APA**), CareNation therefore desires the protection of a protective order from this Court to ensure that its turning the same over to CDS does not cause it to

{02235147.2 }4

Case 3:20-ap-90140    Doc 73-1    Filed 05/24/21    Entered 05/24/21 16:35:40    Desc
Exhibit 1 Proposed Agreed Omnibus Order    Page 4 of 16

violate HIPAA and supporting regulations. The entry of such a protective order in this adversary proceeding is appropriate because doing so will allow CDS to pursue the full scope of relief originally sought in this Adversary Proceeding- the collection of the Capstone Accounts Receivable.

7. Upon (i) the final disbursement of the balances remaining in the Provider Account, (ii) the closing of the Provider Account to prevent any further direct deposits into same by payors, (iii) the turning over to CDS (or its designated collection agent), from time to time as requested, of all requested patient and/or claim related records of Capstone necessary to allow CDS to directly collect the accounts receivable from the obligated parties, and (iv) the resolution of any disputes between the parties concerning the amount of reasonable fees, costs and expenses owed for CDS to CareNation in conjunction with the production of such records, the Parties will have resolved all pending disputes between them at issue in this Adversary Proceeding and they will be in a position to submit an agreed order of dismissal of the claims and counterclaims in the Adversary proceeding. However, in an abundance of caution and to avoid any misunderstanding, the Parties agree and stipulate that though one installment of the balance separately due from CareNation to CDS under the APA was paid by means of an offset effectuated through the disbursements made in conjunction with the Phase I and II Reconciliations, and future payments may be set off in part as set forth herein, the balance not yet due from CareNation to CDS under the APA is not, and has never been, the subject matter of this Adversary Proceeding. Any dismissal of this Adversary Proceeding will have no effect on CDS' claim to the payment of balances due from CareNation under the APA, the respective claims, rights, defenses and obligations of the parties under the APAP, or the parties' respective rights to seek enforcement of same when such payments come due under the APA.

**NOW, THEREFORE**, based on and incorporating these stipulations which are made findings of this Court, and in order to effectuate the relief agreed upon herein, it is **ORDERED** as follows:

{02235147.2 }5

Case 3:20-ap-90140   Doc 73-1   Filed 05/24/21   Entered 05/24/21 16:35:40   Desc
Exhibit 1 Proposed Agreed Omnibus Order   Page 5 of 16

1. **Disbursement to CDS.** Immediately upon entry of this Order, Capstone, by and through the CRO, is hereby authorized and directed to disburse from the Provider Account a wire transfer in the amount of $7,000 payable to CDS.

2. **Disbursement to CareNation.** Immediately upon entry of this Order, Capstone, by and through the CRO, is hereby authorized and directed to disburse from the Provider Account a wire transfer in the amount of $97,917.25 payable to CareNation.

3. **Allocation of Excess Proceeds.** If, upon payment of the above sums, the CRO determines that there are any excess proceeds in excess of $104,917.25 remaining in the Provider Account, 15% of said excess funds shall be paid to CDS, and 85% shall be paid to CareNation, such that there is no remaining balance in the Provider Account.

4. **Reduction of Payments (If Necessary).** If the CRO determines that there is less than $104,917.25 in the Provider Account on the Distribution Date, the CRO shall reduce the payments set forth in a manner consistent with subparagraph 3. By way of example, if there is only $102,000.00 in the Provider Account on the Distribution Date, CareNation will be paid $95,437.59 and CDS will be paid $6,562.41.

5. **Closure of Provider Account.** Immediately upon distributing all funds in the Provider Account, the CRO shall notify Bank of America and Bank of America is hereby directed to close the Provider account, and shall not assess to the Provider Account, Debtor, Trustee, or either party to this Adversary Proceeding any additional fees associated with the Provider Account

{02235147.2 }6

Case 3:20-ap-90140    Doc 73-1    Filed 05/24/21    Entered 05/24/21 16:35:40    Desc
Exhibit 1 Proposed Agreed Omnibus Order    Page 6 of 16

6. **Production of Medical Billing and Payment Records of Capstone.** Upon written request(s) by CDS, and in accordance with Section 8 below, CareNation shall turn over to CDS (or its designated collections agent) any and all requested patient or claim related records of Capstone in its custody, care or control, including, but not limited to, the following documents or categories of documents:

   a. Patient Fact Sheets;

   b. Patient Profiles;

   c. Patient Financial Responsibility

   d. Date of last statement sent to Patient

   e. Date and type of service

   f. Service statement

7. **Retention of Medical Records Necessary for Continued Treatment of Patients by CareNation.** Notwithstanding the foregoing, CareNation shall be allowed to retain copies of all medical records necessary and appropriate for continued treatment of patients previously treated by Debtor.

8. **Reimbursement of Reasonable Production Expenses Incurred by CareNation.** Except as set forth in subsections (a) and (b) below, CDS shall be responsible for the reasonable costs and expenses incurred by CareNation in locating, copying (as necessary) and producing any requested patient related records identified in Paragraph 6 of this Order (collectively the "**Production Costs**"), subject to the provisions contained in the following subparagraphs:

{02235147.2 }7

Case 3:20-ap-90140    Doc 73-1    Filed 05/24/21    Entered 05/24/21 16:35:40    Desc
Exhibit 1 Proposed Agreed Omnibus Order    Page 7 of 16

a.  CareNation shall, at its expense and without any claim for, or right to, reimbursement from CDS, within five (5) business days of entry of this Order, provide CDS a claims detail reports showing the status of open claims, the amount of open claims, and insurance information related to those claims, for each of the following time periods, if such periods are available and accessible by CareNation::

  <u>i)</u>  July 21, 2015 to July 20, 2016;

  <u>ii)</u> July 21, 2016 to July 20, 2017;

  <u>iii)</u>July 21, 2017 to July 20, 2018;

  <u>iv)</u>July 21, 2018 to July 20, 2019;

  <u>v)</u>  July 21, 2019 to July 20, 2020;

b.  CareNation shall, at its expense and without any claim for, or right to, reimbursement from CDS, and within forty five (45) days entry of this Order, provide CDS with the most recent billing statements (also known as patient responsibility statements), for five hundred (500) patient or claim files, which list has been provided by CDS to CareNation. To the extent that CareNation does not have records for any of the 500 patient or claim files presented, CDS may substitute other patient or claim files in a supplemental request, which records shall be provided by CareNation at no additional charge to CDS, within an additional 30 days of being provided with such supplemental list.

c.  CDS may, at any time, and from time to time, request from CareNation production of all or any specifically identified portion of patient related records of Capstone, for one or more of the above referenced time periods, set forth in section 6. . Within five (5) days of such request, the Parties shall meet and confer to discuss initial considerations for production of such requested records, as well as Production Costs. Within three (3) business days of such meeting, CareNation shall provide to CDS, in writing, an estimate for the costs of such production. Within ten (10) business days of receipt of CareNation's estimate of Production Costs, CDS shall notify CareNation of its acceptance or rejection of the estimated Production Costs. No later than ten (10) days after (i) receipt of a request from CDS for production, and (ii) the acceptance or agreement of the parties on the Production Costs, CareNation shall, provide to CDS the requested books and records, along with an invoice for the actual Production Costs. To the extent that that the actual Production Costs for the requested materials are less than or equal to the Estimated Production Costs, CareNation shall be entitled to recoup the same via set-off as provided in subparagraph (f), below. To the extent that the actual Production costs exceed the Estimated Production costs, and the parties are not otherwise able to agree on the reasonableness of the difference, CareNation may petition this court for allowance of the excess Production costs in accordance with subparagraph (e).

{02235147.2 }8

Case 3:20-ap-90140    Doc 73-1    Filed 05/24/21    Entered 05/24/21 16:35:40    Desc Exhibit 1 Proposed Agreed Omnibus Order    Page 8 of 16

d.  In the event that CDS disputes the reasonableness of CareNation's estimated Production Costs for any given request for production, CDS may seek determination from this Court in advance of the reasonable Production Costs to be allowed to be recouped by CareNation for production, by filing a motion before this court, pursuant to subparagraph (e), below. If upon judicial determination of the reasonable production costs for the books and records, CDS determines to request said books and records, CareNation shall within 10 days of written notice, provide to CDS the requested books and records, and be entitled to recoup the reasonable Production Costs ordered by this Court pursuant to subparagraph (e) by set-off pursuant to subparagraph (f)

e.  This Court retains jurisdiction to determine the reasonableness of Production Costs for any category or subcategory of books and records, and for any time period, whether presented to the court as a motion for determination of reasonable Excess Production Costs filed by CareNation pursuant to subparagraph (c), or whether as a motion for determination of reasonable Production costs filed b or by CDS pursuant to subparagraph (d).

f.  Whether achieved by agreement or otherwise as set forth in subparagraph (c), or whether determined in accordance with subparagraph (d), CareNation's sole and exclusive means of recouping its agreed or court allowed actual Production Costs shall be by set-off from the next installment payment due CDS under the APA.

9. **Protective Order.** The parties, their agents and attorneys are hereby authorized to receive protected health information pertaining to any and all patients of Capstone (said patients the "Capstone Patients"); to the extent of, and subject, to the conditions set forth herein. For the purposes of this qualified protective order, "protected health information" shall have the same scope and definition as set forth in 45 C.F.R. § 160.103 and 164.501, including, but not limited to, information related to:

   a. The past, present, or future physical or mental condition of Capstone's Patients

   b. The provision of care to Capstone's Patients.

   c. The payment for care provided to the Patients, which identifies names of the Patients or which reasonably could be expected to identify names of the Patients.

All "covered entities," as defined in 45 C.F.R. § 160.103, are authorized to disclose protected health information pertaining to Capstone's Patients to CDS, its attorneys in this Action and the designated collection agents of CDS. The parties and their attorneys, as well as any collection agents retained by

{02235147.2 }9

Case 3:20-ap-90140   Doc 73-1   Filed 05/24/21   Entered 05/24/21 16:35:40   Desc
Exhibit 1 Proposed Agreed Omnibus Order    Page 9 of 16

either, shall be permitted to use the protected health information in any other manner reasonably connected to collection of Accounts Receivable of Capstone prior to the closing of the APA[3], including, but not limited to, disclosure to, the court, necessary court personnel, court reporters, copy services, trial consultants, jurors, any appellate court, and other persons and entities involved in the litigation process All protected health information produced or disclosed shall be used solely for collection of Capstone's Accounts Receivable and shall not be used for any other purpose pending further orders of this Court. Notwithstanding the provisions of this paragraph, no agent or representative of CDS (including collection agents, insurers, claims managers, experts, and consultants) may be granted access to the documents produced until such person has read this Order and executed the acknowledgment attached to the Order as **Exhibit 1.** The parties shall maintain these written agreements (Exhibit 1) and shall make them available upon request to counsel for any other Party. Notwithstanding the foregoing, any person or entity in possession of protected health information shall maintain the information in a reasonably secure manner, and shall not reveal to or discuss such information with any person not entitled to receive it, so that the protected health information is not further disclosed or used in any manner inconsistent with this Order. Any other persons or entities that came into possession of the protected health information shall return the protected health information to the covered entity that provided it, or promptly destroy the protected health information, except for health information that was submitted to the court. Nothing in this Order authorizes counsel to obtain medical records or information through means other than formal discovery requests, subpoenas, depositions, patient authorizations, or other lawful processes. Likewise, nothing in this order is intended to limit in any way any party's right to compel production of any documents through formal discovery requests, subpoenas, depositions, patient authorizations or other lawful process, the intent of this order being solely to govern the voluntary production of the

---

[3] See, e.g., 45 C.F.R. § 164.501(6)(iv).

{02235147.2 }10

Case 3:20-ap-90140    Doc 73-1    Filed 05/24/21    Entered 05/24/21 16:35:40    Desc
Exhibit 1 Proposed Agreed Omnibus Order    Page 10 of 16

Initial Disclosures as set forth herein. This Order does not control or limit the use of protected health information pertaining to the Capstone Patients that comes into possession of any party, or any party's attorney, from a source other than a covered entity as defined in 45 C.F.R. § 160.103.

10. **Preparation of Order of Dismissal of Adversary Proceeding.** Upon disbursal of the remaining Provider Account balance in accordance with this Order, the subsequent closing of the Provider Account, CareNation's compliance with the requirements to turn over requested patient related of Capstone to CDS (or its designated collection agent), CDS' confirmation that it will be requesting no additional medical or billing records, and the resolution of any disputes between the parties concerning the amount of reasonable costs and expenses owed for CDS to CareNation in conjunction with the production, the parties shall submit an agreed order dismissing with prejudice all claims and counterclaims asserted in this Adversary Proceeding, which order shall reflect the fact that, other than the offsets provided for in this Order, nothing in that order will have any effect on, or constitute any waiver, in whole, of any rights, claims, obligations or defenses of the parties under the APA. .

It is so **ORDERED.**

*[This order was signed and entered electronically as indicated at the top of the first page.]*

{02235147.2 }11

Case 3:20-ap-90140    Doc 73-1    Filed 05/24/21    Entered 05/24/21 16:35:40    Desc Exhibit 1 Proposed Agreed Omnibus Order    Page 11 of 16

**SUBMITTED FOR ENTRY:**

**BONE McALLESTER NORTON PLLC**

*/s/ William J. Haynes, III*
Sam J. McAllester III, #03461
William J. Haynes III, #17398
511 Union Street, Suite 1600
Nashville, Tennessee 37219
(615) 238-6300 Phone
(615) 238-6301 Facsimile
Email: smcallester@bonelaw.com
whaynes@bonelaw.com

*Attorney for America Cares Trust, Inc.*
*d/b/a CareNation*


*/s/ Daniel H. Puryear with permission (WJH)*
Daniel H. Puryear #18190
Puryear Law Group PLLC
104 Woodmont Boulevard, Suite 201
Nashville, TN 37205
615-255-4859 (phone)
615-630-6003 (fax)
dpuryear@puryearlawgroup.com

*Counsel for the Plaintiff,*
*CDS Business Services, Inc.*
*d/b/a Newtek Business Credit*

{02235147.2 }12

Case 3:20-ap-90140    Doc 73-1    Filed 05/24/21    Entered 05/24/21 16:35:40    Desc
Exhibit 1 Proposed Agreed Omnibus Order    Page 12 of 16

# CERTIFICATE OF SERVICE

   I hereby certify that a true and correct copy of the foregoing was filed electronically on May 21, 2021. Notice of this filing was sent by operation of the Court's electronic filing system to all those parties specifically requesting electronic service and as indicated on the electronic filing receipt. Parties may also access this filing through the Court's electronic filing system.


David W. Houston IV
Burr & Forman LLP
222 Second Avenue South, Suite 2000
Nashville, TN 37201
dhouston@burr.com
*Counsel for Capstone Pediatrics, PLLC*

Daniel Fleming
Wong Fleming
821 Alexander Road, Suite 200
Princeton, NJ 08540
dfleming@wongfleming.com
*Counsel for Bank of America, NA*

Michael Gigandet, Trustee
Law Office of Michael Gigandet
208 Centre Street
Pleasant View, TN 37146
michael@mgigandet.com

Megan Seliber
Office of the U.S. Trustee, Trial Attorney
318 Customs House, 701 Broadway
Nashville, TN 37203
megan.seliber@usdoj.com
*Counsel for the United States Trustee*

{02235147.2 }13

Case 3:20-ap-90140    Doc 73-1    Filed 05/24/21    Entered 05/24/21 16:35:40    Desc
Exhibit 1 Proposed Agreed Omnibus Order    Page 13 of 16

# **EXHIBIT 1**

{02228193.2 }  EXHIBIT 1

Case 3:20-ap-90140   Doc 73-1   Filed 05/24/21   Entered 05/24/21 16:35:40   Desc
Exhibit 1 Proposed Agreed Omnibus Order   Page 14 of 16

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 3:19-bk-1971 |
| CAPSTONE PEDIATRICS, PLLC, ) | |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | |
| ) | |
| CDS BUSINESS SERVICES, INC. d/b/a ) | |
| NEWTEK BUSINESS CREDIT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. Proc. No. 3:20-ap-90140 |
| ) | |
| AMERICA CARES TRUST d/b/a ) | |
| CARENATION, ) | |
| ) | |
| Defendant. ) | |

## CERTIFICATE OF COMPLIANCE WITH SECOND AGREED HIPAA QUALIFIED PROTECTIVE ORDER

I, the undersigned, hereby acknowledge that protected information, in whole or in part, and the information contained therein which has been produced by the parties to this action pursuant to the attached "AGREED ORDER MODIFYING PRELIMINARY INJUNCTION, AUTHORIZING FINAL DISBURSEMENTS TO PARTIES, AND GRANTING RELATED RELIEF AND SECOND AGREED QUALIFIED HIPAA PROTECTIVE ORDER" (the "**Protective Order**") has been disclosed to me, and by signing this Certificate of Compliance, I acknowledge and agree that I have read, understand, and am subject to the provisions of the Protective Order and will not disclose such protected information in whole or in part or in any

{02228193.2 }  2

Case 3:20-ap-90140    Doc 73-1    Filed 05/24/21    Entered 05/24/21 16:35:40    Desc
Exhibit 1 Proposed Agreed Omnibus Order    Page 15 of 16

form or the information contained therein to any person, corporation, partnership, firm, governmental agency or association other than those listed in Paragraph 8 of the Protective Order.

Date: _____

Printed name: _____

Signature: _____

{02228193.2}     3

Case 3:20-ap-90140   Doc 73-1   Filed 05/24/21   Entered 05/24/21 16:35:40   Desc
Exhibit 1 Proposed Agreed Omnibus Order   Page 16 of 16